**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

FILED
CLERK, U.S. DISTRICT COURT

DEC 20, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY:      BH      DEPUTY

Anthony Guzman,

                          Plaintiff,

            v.

Market Refrigeration Specialists,

Inc., et al.,

                          Defendants.

**ED 14-cv-01653 VAP (SPx)**

**Order Granting Motion for Final Approval of Class Action Settlement [Doc. No. 59] and Granting in Part and Denying in Part Motion for Attorneys' Fees and Costs [Doc. No. 62]**

        On October 31, 2017, Plaintiff Anthony Guzman ("Plaintiff") and Defendants Market Refrigeration Specialists, Inc. and William T. Badger ("Defendants") filed their joint motion for final approval of class action settlement.  (Doc. No. 59.)  Also on October 31, 2017, Plaintiff filed his motion for attorneys' fees.  (Doc. No. 61.)

This matter came for a hearing on December 4, 2017, and the Court heard oral argument from the parties.  (Doc. No. 64.)  After considering all papers filed in support of the Motion and the oral argument of the parties, the Court GRANTS the motion for final approval of the settlement agreement and GRANTS IN PART and DENIES IN PART the motion for attorneys' fees.

**I. BACKGROUND**

**A.  Factual and Procedural History**

1

Plaintiff alleges he was a non-exempt employee who worked as a service technician for Defendants.  (Doc. No 1 ¶¶ 34–36, 53.)  Defendants ran a refrigeration and HVAC repair service, primarily specializing in servicing refrigeration units in grocery stores.  (<u>Id.</u> ¶¶ 34–36.)  Plaintiff worked for Defendants from approximately July 2011 to September 2013 and was paid $35 per hour as his regular wage and $52.50 per hour for any work completed between Monday and Friday after 6:00 p.m. and before 6:00 a.m.  (<u>Id.</u> ¶¶ 41, 48.)

On August 11, 2014, Plaintiff filed his complaint alleging that Defendant violated the Fair Labor Standards Act ("FLSA"), 21 U.S.C. § 201 *et seq.*, California Labor Code §§ 203, 226.7, 510, 512, 1194, 1198, and California Business and Professions Code § 17200 *et seq.*  (Doc. No. 1 at 1.)

Specifically, Plaintiff alleges Defendants required him to work more than 40 hours per week without paying overtime wages (<u>id.</u> ¶ 45) and failed to compensate him for—among other things—on-call time, time spent attending mandatory meetings, work done at home, ordering parts, work done researching customer's problems, and troubleshooting (<u>id.</u> ¶ 51). Plaintiff also claims Defendants failed to provide him with necessary meal and rest breaks (<u>id.</u> ¶¶ 108–11), failed to pay him all wages owed upon termination (<u>id.</u> ¶¶ 112–16), and violated Section 17200 of the California Business and Professions Code (<u>id.</u> ¶¶ 117–22).

United States District Court
Central District of California

2

Plaintiff asserts these claims on his behalf and on behalf of two separate classes.  (Id. ¶¶ 56–84.)  Plaintiff alleges the "FLSA Class" consists of "all current and former nonexempt hourly paid service technicians who worked at least one week for Defendants at any time starting three years prior to the filing of this Complaint through the present." (Id. ¶ 73.)  Plaintiff alleges the "California Class" consists of "[a]ll current and former non-exempt hourly paid service technicians who worked for Defendants in California at any time starting four years prior to the filing of this Complaint through the present."  (Id. ¶ 75.)

**B.  Settlement Class**

The proposed class is defined as:

All persons who are or were employed by Market Refrigeration Specialists, Inc. as non-exempt service technicians within the State of California at any time between August 11, 2010 and the date of Preliminary Approval of the Class Settlement.

(Doc. No. 52 at 13.)  The proposed class consists of 39 individuals who submitted 14 valid claims.  (Doc. No. 61 at ¶ 5.)

**C.  Settlement Terms**

The Parties have jointly prepared a settlement agreement.  (Doc. No. 52-1 at 3–28.)  The settlement agreement establishes a maximum settlement fund of $80,000, which Defendants will create by making two

payments of $26,667 and one payment of $26,666 over a period of 90 days. (Id. at ¶ 7.)  Class Counsel may seek up to $26,667.67 for attorneys' fees, as well as up to $4,700 in costs and expenses.  (Id. at ¶ 8(c).)  The agreement also states that the settlement administrator will provide administration services for $8,000.  (Id. at ¶ 8(d).)  Finally, the settlement agreement entitles class representative, Anthony Guzman, to a service award of $2,500.  (Id. at ¶ 8(b).)

## II.   DISCUSSION

### A. Final Class Certification

Based on the showing made by the Parties in support of the Motion for Preliminary Approval and the Motion for Final Approval, and as discussed more fully in the Preliminary Approval Order, the Court finds the parties have met their burden as to the prerequisites for class certification set forth in Federal Rule of Civil Procedure Rule 23(a) and (b)(3).

Specifically, the Class includes 39 current and former employees. Although the Class does not meet the forty-member limit where numerosity is presumed, the Class is well within the range that courts in the Ninth Circuit have found permissible.  See Ehret v. Uber Techs., Inc., 148 F. Supp. 3d 884, 890 (N.D. Cal. 2015) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); see also Greko v. Diesel U.S. A., Inc., 277 F.R.D. 419, 425 (N.D. Cal. 2011). As to commonality, the Class is defined as all persons employed at Market Refrigeration Specialists, Inc. ("MRS") from August 11, 2010 and December

United States District Court
Central District of California

5, 2016.  Questions about whether MRS required its employees to work without proper compensation for overtime, whether class members are non-exempt employees, and whether Defendants' meal- and rest-break policy complies with California law would be common to every member of the Class.  (Doc. No. 58 at 7–8.)  As to typicality, the facts common to the Settlement Class create liability for claims that are typical to the Class—violations of the California Labor Code and related laws and regulations.  (Id. at 8–9.)  As to adequacy of representation, Class Counsel is experienced and capable of fairly and competently representing the interests of the Class.  (Id. at 9–10.)

Accordingly, the Court GRANTS final class certification and designates the case as a collective action.

**B. Final Approval of the Settlement**

　　**1.  Approval of the Settlement Terms**

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court should approve a settlement pursuant to Rule 23(e) only if the settlement is "fundamentally fair, adequate and reasonable."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted).

"[T]he settlement may not be the product of collusion among the negotiating parties."  Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),

United States District Court
Central District of California

213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).  In addition, a court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

1. the strength of the plaintiff's case;
2. the risk, expense, complexity, and likely duration of further litigation;
3. the risk of maintaining class action status throughout the trial;
4. the amount offered in settlement;
5. the extent of discovery completed, and the stage of the proceedings;
6. the experience and views of counsel;
7. the presence of a governmental participant; and
8. the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998).

The factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  Torrisi, 8 F.3d at 1376.  In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525–26 (C.D. Cal. 2004); Id.

### a. Non-Collusive Negotiations

Since the case was filed on August 11, 2014, the parties have litigated a motion to dismiss (Doc. No. 27); stipulated to a protective order

maintaining the confidentiality of documents produced by Defendants (Doc. No. 45); engaged in "extensive discovery and months of ongoing negotiations" in which "the strengths and weaknesses of the parties' respective claims and defenses were fully explored" (Doc. No. 45 at 24, 28); and exchanged "extensive iterations of comments and edits to the proposed settlement agreement, involving every material term" (Doc. No. 52-2 at ¶ 17).  Further, there is no evidence to suggest the current settlement was the product of collusion.  Accordingly, this factor weighs in favor of final approval.

### b.  Strength of the Plaintiffs' Case and Future Risks[1]

In Plaintiff's initial complaint, he asserted various wage-and-hour claims against Defendant, including failure to pay overtime wages (Doc. No. 1 ¶ 45), failure to provide necessary meal and rest breaks (id. ¶¶ 108–11), failure to pay all wages owed upon termination (id. ¶¶ 112–16), and violations of section 17200 of the California Business and Professions Code (id. ¶¶ 117–22).  After reviewing pay and time records provided by Defendant, however, Plaintiff decided to pursue only his claim for failure to provide meal and rest breaks.  (Doc. No. 52 at 10.)  Although Plaintiff believes this claim has merit, Defendants vigorously deny Plaintiff's allegations.  (Doc. No. 59 at 9, 17.)  Class Counsel recognizes the difficulty of prevailing on Plaintiff's meal- and rest-break claim.  (Id. at 17–18; Doc.

---

[1] As the first three Hanlon factors—strength of the Plaintiff's case, the risk, expense, complexity, and likely duration of future litigation, and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here.

United States District Court
Central District of California

No. 52 at 10–11.)  Specifically, Class Counsel notes that, in California, an employer satisfies its duty to provide meal and rest breaks if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so . . . . [but an employer] is not obligated to police meal breaks and ensure no work thereafter is performed."  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040, 273 P.3d 513, 536–37 (2012).  Thus, to prove Defendants failed to provide meal and rest breaks, Plaintiff would have to show more than the fact that workers did not take breaks.  (Doc. No. 52 at 10–11).  Further, Class Counsel notes that class certification is not a certainty because case law supports the proposition that individualized factual questions may predominate in wage-and-hour claims.  (Id.)

Absent a settlement, Class Counsel notes that continuing to litigate this class action would be a complex, lengthy, and expensive process. (Doc. No. 59 at 17.)  Specifically, "[l]itigating these complex claims would require substantial and additional discovery and further pre-trial motions . . . ."  (Id.)  Class Counsel anticipates that any judgment in favor of Plaintiff would probably be followed by appeals "with the result that payments to Class Members, if any, would likely occur only after several years of delay." (Id. at 18.)  In addition, Class Counsel has also previously noted that "many of [current and former employees of Defendant] have moved out of state and/or have been difficult to locate [for depositions]."  (Doc. No. 52 at 27.) Similarly, even if Plaintiff were to obtain a favorable verdict, it may not be collectable as Defendants have no insurance coverage for the current action

United States District Court
Central District of California

and assert they would be forced to file for bankruptcy protection in the face of "an adverse judgment of any significant amount." (Id. at 12.) Accordingly, given these threats to recovery and the significant amount of time and expense the parties would have to expend litigating this case if it were to continue, the Court finds that this factor weighs in favor of granting this Motion.

### c. Amount Offered in the Settlement

"The settlement creates a common fund of $80,000." (Doc. No. 59 at 10.) The Parties seek the following distributions out of the settlement fund before class members receive their awards: attorneys' fees in the amount of $26,666.67, an expense reimbursement of $4,700.00, and a settlement administrator payment of $8,000.00. (Id.) After these deductions, $40,633.33 to satisfy the participating class members' claims.[2] This results in an average recovery of approximately $980.33. (Doc. No. 61 at ¶ 8.)

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003). As discussed in more detail below, the attorneys' fees in this case are unreasonable. The Court, therefore, will reduce the attorneys' fees

---

[2] The declaration by the settlement administrator's case manager includes a deduction for a $2,500 incentive payment for the representative plaintiff to calculate the net settlement amount. (See Doc. No. 61 at ¶ 7.) The Court, however, did not preliminarily approve the incentive payment due to a lack of evidence. (Doc. No. 57 at 23–24.) Because Plaintiff does not address the incentive payment in either of his instant Motions, the Court does not grant final approval of the incentive payment.

United States District Court
Central District of California

award to 25% of the common fund ($20,000.00).  After those reductions,

class members are left with a maximum remainder of $47,300.  The Court

finds that this increased net recovery weighs in favor of final approval.

### d.  Extent of Discovery Taken in the Case

This factor requires the Court to evaluate whether "the parties have

sufficient information to make an informed decision about settlement."

Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  Here,

class counsel states he "conducted a thorough investigation into the merits"

of the case (Doc. No. 63 ¶ 7); interviewed several class members regarding

his job duties, hours worked, Defendants' pay policies, and Defendants'

organizational structure (Doc. No. 59 at 15); "propounded discovery

requests on January 19, 2015 and again on April 29, 2015" (id.); "reviewed

and analyzed over 20,000 pages of documents including service operating

procedures, payroll and time tracking data, including job descriptions and

other documents related to duties and responsibilities . . ." (id.); and

prepared a damage model for each class member (Doc. No. 63 ¶ 13).

Further, Class Counsel engaged in "months of ongoing negotiations" prior to

settlement.  (Doc. No. 52 at 28.)  Accordingly, the Court finds this factor

weighs in favor of final approval.  See Linney, 151 F.3d at 1239.

### e.  Experience and Views of Counsel

Class Counsel has ample experience litigating wage-and-hour class

actions similar to this case and hence has demonstrated his ability to

prosecute this action vigorously on behalf of the class members.  In his

declaration, Class Counsel states he has "over 15 years of complex

United States District Court
Central District of California

10

litigation experience handling medical malpractice, product liability, and wage and hour cases [and has] conducted hundreds of depositions and . . . chaired multiple complex trials in Federal and State Courts." (Doc. No. 63 ¶ 6.)  In class counsel's opinion, "the settlement constitutes a fair, reasonable, and adequate result for the Class Members in light of the risks, expenses, and delay of further litigation, as well as the strengths and weaknesses of the Class Members' claims." (Id. ¶ 20.)  Accordingly, the Court finds this factor weighs in favor of final approval.

### f.  Presence of a Governmental Participant

There is no governmental participant in this action.  Thus, this factor is irrelevant for the purposes of final approval.

### g.  Reaction of Class Members to the Settlement

The settlement administrator mailed notices to 39 class members. (Doc. 60 ¶ 7.)  After updating address information, the settlement administrator re-mailed one of the notices.  (Id. ¶ 8–9.)  None of the notices were ultimately deemed undeliverable.  (Id. ¶ 10.)  Of those 39 notices, 14 class members submitted claims to the settlement administrator.  (Id. ¶ 16; Doc. No. 61 ¶¶ 3, 5.)  None objected to the settlement or opted out.  (Doc. No. 60 ¶¶ 11, 15.)

Although less than half of the settlement class have submitted claims, the fact that no class members have objected or opted out suggests a favorable reaction to the settlement.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009) (finding a favorable reaction where there

were no objections and less than 15% of the class submitted claims forms).

This factor, therefore, favors final approval of the settlement.

### h. Balance of Factors

The Court finds that, after the reduction to the attorneys' fees and representative awards, the balance of the factors favors final approval and that the settlement agreement is fair, reasonable, and adequate. Accordingly, the Court GRANTS final approval of the settlement.

### 2. Approval of Notice Procedures

Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B). In addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment. Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs must provide notice to potential opt-in class members that is "timely, accurate, and informative." See Hoffmann-La Roche v. Sperling, 493 U.S. 165, 172 (1989). Likewise, claim forms must be informative and accurate. Id. at 172; Churchill Vill., LLC v. GE, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse

viewpoints to investigate and to come forward and be heard") (citation omitted).

The Court previously accepted the proposed notice form and administration procedures.  (Doc. No. 58 at 26–27.)  According to Ani Shirinian, a Case Manager for the settlement administrator, notice was disseminated through procedures that were in conformity with the Court's preliminary approval order.  (Doc. No. 60 at 3–4.)  Given Shirinian's representations, the Court finds that the Notice was reasonable as to its content and the method of communication.  Accordingly, the Court approves the notice procedures.

**B. Attorneys' Fees and Costs, and Settlement Administrator Costs**

Class Counsel request final approval of the attorneys' fees and costs. The Court addresses Class Counsel's request and the settlement administrator's costs below.

**1.  Attorneys' Fees**

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.), 654 F.3d 935, 941 (9th Cir. 2011).

Under both Ninth Circuit and California precedent, a court may exercise discretion to award attorneys' fees from a common fund by

applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assur. Soc'y of United States, 307 F.3d 997, 1006 (9th Cir. 2002); Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 254 (2001).  "Irrespective of the chosen method, the 'district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.'"  Alberto v. GMRI, Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008) (quoting Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.), 19 F.3d 1291, 1296 (9th Cir. 1994)) (internal quotation marks omitted).

Plaintiff seeks to employ the percentage-of-the-fund method, whereby Class Counsel request $26,666.67—or 33%—of the gross $80,000 settlement fund for attorneys' fees.  (Doc. No. 62 at 10.)  When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record."  Monterrubio v. Best Buy Stores, Ltd. P'ship, 291 F.R.D. 443, 445 (E.D. Cal. 2013) (citation omitted); see also Hanlon, 150 F.3d at 1029.  The percentage may be adjusted upward or downward based on "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burden carried by class counsel; and (6) the awards made in similar cases."  Monterrubio, 392 F.R.D. at 456 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002)). Additionally, "the lodestar may provide a useful perspective on the

reasonableness of a given percentage award."  Vizcaino, 290 F.3d at 1050

(9th Cir. 2002).[3]  The Court addresses those factors below.

### a.  Benchmark Departure Factors

*Results Achieved*

Class Counsel achieved a settlement fund of $80,000 to be split

amongst 39 class members.  (Doc. No. 62 at 10.)  Class members are paid

based on the number of weeks worked during the Settlement Class Period.

(Doc. No. 52-1 ¶ 8(a)(i).)  According to the Claims Administrator, as of

October 31, 2017, the average settlement share to be paid to class

members is approximately $980.33.  (Id.)  Assuming each meal- or rest-

break violation is worth $35, such a recovery would represent full

compensation for only 28 meal- and rest-break violations per class member

for the four-year period at issue.  (Doc. No. 1 ¶¶ 11, 48, 111.)

As explained in the order granting preliminary approval, Class

Counsel decided to pursue only a claim for failure to provide meal and rest

breaks even though Plaintiff's Complaint alleged six separate causes of

action.  (Doc. No. 58 at 18–19.)  Further, Class Counsel obtained no

---

[3] Class Counsel suggests that the 25% benchmark is only appropriate for
"mega-fund" class actions in the $50–200 million range.  (Doc. No. 62 at 13–
14 (citing Vizcaino, 290 F.3d at 1047).)  The Ninth Circuit, however, explicitly
rejected that characterization.  Vizcaino, 290 F.3d at 1047 ("We did not adopt
this observation as a principle governing fee awards.").   "Rather, [the Ninth
Circuit] merely noted that in cases of that magnitude, fund size is one relevant
circumstance to which courts must refer . . . ."  Id. (emphasis added).  Similar-
ly, Class Counsel's reliance on In re Activision Sec. Litig., 723 F. Supp. 1373
(N.D. Cal. 1989) is unavailing.  Activision is not binding and was decided be-
fore the Ninth Circuit reaffirmed the 25% benchmark in Vizcaino.

United States District Court
Central District of California

injunctive relief.  The relatively modest result does not justify a departure

from the benchmark.  See Clayton v. Knight Transp., No. 1:11-cv-00735-

SAB, 2013 WL 5877213, at *7 (E.D. Cal. Oct. 30, 2013) (denying a request

for one third of the common fund and awarding the benchmark where,

among other things, the results achieved were "good" but not "exceptional"

because class members were "anticipated to recover less than 50% of their

potential recovery"); Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964,

983 (E.D. Cal. 2012) (holding that recovery of $2,000 per class member in

wage and hour class action was "not so exceptional as to . . . justify an

increase in the 25% benchmark").


        Thus, this factor weighs against an attorneys' fees award above the

25% benchmark.


*Risks of Litigation*

        Class Counsel noted the significant risks to prevailing on Plaintiff's

meal- and rest-break claim.  (Doc. No. 59 17–18.)  Specifically, Class

Counsel noted that in California, an employer satisfies its duty to provide

meal and rest breaks if it "relieves its employees of all duty, relinquishes

control over their activities and permits them a reasonable opportunity to

take an uninterrupted 30-minute break, and does not impede or discourage

them from doing so . . . [but an employer] is not obligated to police meal

breaks and ensure no work thereafter is performed."  Brinker Rest. Corp.,

53 Cal. 4th at 1040.  Thus, Plaintiff faces the challenge of showing

Defendants did not provide for meal and rest breaks—and not just that

Plaintiff did not take meal and rest breaks.  (Doc. No. 52 at 11.)  Class

United States District Court
Central District of California

United States District Court
Central District of California

Counsel also stated that class certification is not a certainty because case law supports the proposition that individualized factual questions may predominate in wage and hour claims.  (Id.)  Further, Defendant Market Refrigeration Specialists, Inc. "is a small, low-margin, individually owned business operating in a highly competitive industry"; "numerous of [Defendant's] largest clients have recently filed for bankruptcy resulting in serious financial issues and losses for [Defendant]"; and Defendant has [no insurance coverage to pay for any judgment in this case."  (Doc. No. 52-3 ¶¶ 3–5.)

Although these facts show that Class Counsel assumed a degree of risk by representing Plaintiff, this case is not the type of extreme risk that would merit a departure from the 25% benchmark.  See Monterrubio, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections, and whether plaintiff could overcome an "exhaustion defense"); Vizcaino, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was no supporting precedent); Hawthorne v. Umpqua Bank, No. 11-cv-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding that "expend[ing] a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis" was not sufficiently risky to merit an attorneys' fees award of 33%).

Thus, this factor weighs against an attorneys' fees award above the 25% benchmark.

*Skill and Quality of Work*

As explained in the order granting preliminary approval, this case is an ordinary wage-and-hour dispute, with few novel points of law and little distinguishing it from the many others like it.  While the Court does not doubt that Class Counsel is a skilled litigator, Class Counsel has not shown the kind of exceptional skill or quality of work to warrant a departure from the 25% benchmark.  Thus, this factor weighs against an attorneys' fees award above the 25% benchmark.

*Contingent Nature of the Fee*

Class Counsel took this case on a contingent fee basis.  (Doc. No. 63 ¶ 26.)  The Ninth Circuit "has suggested the distinction between a contingency fee arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark."  Richardson v. THD At-Home Servs., Inc., No. 1:14-cv-0273-BAM, 2016 WL 1366952, at *9 (E.D. Cal. Apr. 6, 2016) (citing In re Bluetooth, 654 F.3d at 942 n.7); see also Torrisi, 8 F.3d at 1376 (noting that there were "no special circumstances . . . which indicate the 25% benchmark award is either too small or too large" even though class counsel took the case on "double contingency").  Accordingly, the Court will treat this factor as neutral.

*Burdens Carried by Class Counsel*

United States District Court
Central District of California

Class Counsel stated it incurred "over $5,000 in out-of-pocket costs" during the course of this case.  (Doc. No. 63 ¶ 15.)  Although Class Counsel engaged in significant discovery and negotiation efforts throughout the case, such is ordinary in similar class action wage-and-hour cases.  Thus, Class Counsel has not shown a significant enough burden to justify departing from the 25% benchmark.  Thus, this factor weighs against an attorneys' fees award above the 25% benchmark.

*Awards Made in Similar Cases*

As noted above, the Ninth Circuit has established a 25% benchmark award for attorneys' fees.  <u>Hanlon</u>, 150 F.3d at 1029.  Class Counsel cites to several cases in which courts have awarded attorneys' above 25% of the total settlement fund.  (Doc. No. 62 at 4–5, 8–9.)  These cases, however, are distinguishable from the present one.

For example, the results achieved in several of those cases appear superior to the results here.  <u>See, e.g.</u>, <u>Covillo v. Specialtys Cafe</u>, No. C-11-0594 DMR, 2014 WL 954516 at *6–7 (N.D. Cal. Mar. 6, 2014) (awarding 30% of the common fund where class counsel achieved a settlement that included injunctive relief and a common fund of $2 million "with certain subclass members receiving full payment for the estimated value of their claims"); <u>Vedachalam v. Tata Consultancy Servs., Ltd</u>, No. C 06-0963 CW, 2013 WL 391319 at *1–2 (N.D. Cal. July 18, 2013) (awarding 30% of the common fund where the class counsel achieved a settlement worth $29,750,000 after seven years of litigation).

United States District Court
Central District of California

Other cited cases warranted a higher fee award because they were risky or presented novel legal issues.  See, e.g, Moore v. PetSmart, Inc., No. 12-cv-3577-EJD, 2014 WL 1927309, at *5 (N.D. Cal. May 14, 2014) (awarding 30% of the common fund where "the theory for unpaid wages for non-productive time and rest breaks . . . was novel and risky"); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 492 (E.D. Cal. 2010) (awarding approximately 33% of the common fund where "some of the key claims involved . . . an issue that is pending before the California Supreme Court.").

The remaining cases cited by Class Counsel are securities litigation cases, not wage-and-hour cases.  See, e.g., In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995); Activision, 723 F. Supp. At 1375; In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir. 2000); In re Omnivision Tech., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

Rather, the Court's own research suggests that such a departure is not standard.  See Brooks v. Life Care Centers of America, Inc., No. SACV 12-00659-CJC (RNBx), 2015 WL 13298569, at *4 (C.D. Cal. 2015) ("Awarding the benchmark in mine run of wage and hour cases appears to be standard in this District."); see also Bravo v. Gale Triangle, Inc., No. CV-16-03347-BRO (GJSx), 2017 WL 708766, at *16 (C.D. Cal. Feb. 16, 2017) (rejecting an upward departure from the benchmark and noting that, "while some courts have found that an upward adjustment is supported in wage and hour class action cases, other courts have not, or have found that such adjustments are supported only when the results are exceptional"); Monterrubio, 291 F.R.D. at 457-58 (rejecting the class counsel's request for

a departure from the 25% benchmark in what the court deemed "a garden-variety wage and hour class action"). While courts may sometimes depart from the benchmark, Class Counsel have not established that such practice is typical in cases such as this one. Accordingly, this factor is neutral at best.

### b. Lodestar Cross-Check

Courts also use the lodestar method, "which measures the lawyers' investment of time in the litigation," to provide a "check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." Id.

The lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d, 359, 363 (9th Cir. 1996). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The "relevant community" for purposes of the "prevailing market rate" is the "forum in which the district court rests." Id. at 979.

United States District Court
Central District of California

Here, Class Counsel have provided information demonstrating the number of hours spent working on the case and the hourly rate of each attorney.  The total amount in attorneys' fees according to Class Counsel's lodestar calculations is $47,877.38.  (Doc. No. 63-3.)  This reflects a lodestar multiplier of 0.417 when compared to the 25% benchmark ($20,000).  Class Counsel's lodestar figure is based on the following hourly rates: $600 for 15-year attorney/partner Gabriel Assaad, $350 for associate attorney Donald Green, $435 for associate attorney John Neuman, $150 for law clerk Carl Fitz, $225 for senior paralegals Kim Black and Gabby Trevino, $100 for legal assistan Yamileth Chevari, $225 for business manager Gary Wohn, and $175 for various other law clerks.  (Id.)

The rates for partner Gabriel Assaad, associate Donald Green, law clerk Carl Fitz,  and legal assistant Yamileth Chevari are reasonable and "in line with those prevailing in the [relevant] community"—the Central Distirct of California—the "forum in which the district court sits."  See Camacho, 523 F.3d at 979–980.  However, the remaining rates are not reasonable.  First, Class Counsel provided no information about the associate attorneys' relative experience.  Without such information, the Court cannot determine whether the associate's hourly rate is appropriate.  Cf. Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 251 (N.D. Cal. 2015) (partner with 16 years of experience awarded hourly rate of $650, while associates with 6 and 4 years of experience awarded hourly rate of $425 and $375, respectively).  In addition, this Court noted that associates generally bill at about 60% of the rate of partners.  See Franco v. City of Victorville, No. CV

07-7670-SVW (Ex), 2009 WL 10668439 at *6 (C.D. Cal. Sept. 23, 2009).

Here, associate attorney John Neuman's hourly rate is significantly above

60% of Mr. Assaad's rate and Class Counsel provides no explanation for

this.  Second, Class Counsel provide no support for the respective hourly

rates of $225 and $175 for its paralegals and "various law clerks."  (Doc. No.

63-3.)  Rather, Class Counsel's cited authority provide that support staff

tend to bill at $150 an hour.


Additionally, the Court has performed a limited review of Class

Counsel's billing reports.  See Schiller v. David's Bridal, Inc., No. 1:10-CV-

00616-AWI, 2012 WL 2117001, at *20 (E.D. Cal. June 11, 2012) ("Where

the use of the lodestar method is used as a cross-check to the percentage

method, it can be performed with a less exhaustive cataloguing and review

of counsel's hours.").  From this initial review, some of Class Counsel's

billings appear excessive.  For example, the attorneys charge their full

billing rates for travel, resulting in billings of over $10,000 for travel alone.

(See, e.g., Doc. No. 63-2 at 2.)  Such expenses are not reasonable.  Cf.

Etter v. Thetford Corp., No. SACV 1300081-JLS (RNBx), 2017 WL 1433312,

at *5 (C.D. Cal. Apr. 14, 2017) ("The Ninth Circuit has held that district

courts have discretion to reduce travel time by half . . . such a reduction [is]

appropriate based on the near certainty that the attorneys did not fully

spend their time performing legal work that benefited the class.") (citations

omitted); Los Angeles Unified Sch. Dist. v. C.M., No. CV 08-00424-MMM

(JCx), 2009 WL 10672592, at *9 (C.D. Cal. Sept. 16, 2009) ("Reducing

travel time by half is consistent with precedent in this and other circuits.")

(citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1298-

99 (9th Cir. 1994) and Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1161 (2d Cir. 1994)).

Even if Class Counsel updated their lodestar figures to remove excessive charges and reduce unreasonable rates, "[t]he fact that the lodestar significantly outpaces an award based on the 25% benchmark . . . is not a compelling reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty."  Brooks, 2015 WL 13298569, at *5; see also Ridge v. Infinity Sales Grp., LLC, No. CV 12-6985-GW (SHx), 2014 WL 12589629, at *8 (C.D. Cal. July 24, 2014) (noting that, "[g]enerally speaking, this Court does not exceed the . . . 25% benchmark" in "relatively simple and straightforward" cases unless "there is some indication that counsel performed exceptionally or in another unusual manner" and that "[t]his remains true even though Plaintiff's counsel indicates that the figure he seeks is itself already a negative multiplier when a lodestar cross-check is applied"); Sandoval v. Tharaldson Employee Management, Inc., No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9 (C.D. Cal. June 15, 2010) (rejecting a request to exceed the 25% benchmark because the plaintiff did not "present[] evidence of unusual circumstances that justify a departure from the Ninth Circuit's benchmark" aside from arguing that the lodestar exceeded the benchmark).

As explained above, Class Counsel has not demonstrated that this case is exceptionally risky or difficult.  Accordingly, the lodestar cross-check does not support a departure from the 25% benchmark.

### c. Conclusion

The totality of the benchmark departure factors does not weigh in favor of an award above the 25% benchmark.

Therefore, the Court finds that the facts of this case do not present the type of "unusual circumstances" required to justify a departure from that benchmark. <u>Graulty</u>, 866 F.2d at 272. Accordingly, the Court DENIES Class Counsel's application for attorneys' fees equal to 33% of the settlement fund ($26,666.67). Instead, the Court APPROVES an attorneys' fees award of 25% of the settlement fund ($20,000).

### 2. Class Counsel Expenses

Class Counsel seeks $4,700 in reimbursement for costs. (Doc. No. 62 at 24.) Class Counsel have submitted a detailed accounting as to those expenses. (Doc. No. 62-4.) The Court finds that reimbursement of those expenses is reasonable and APPROVES the reimbursement of the amount sought.

### 3. Settlement Administrator's Costs

The Court preliminarily approved a settlement administration cost reimbursement of $8,000. (Doc. No. 58 at 24–25.) The Parties have submitted a detailed accounting of the settlement administrator's expenses, which includes creating the mailing list, sending out notices and claim forms, processing opt-outs, verifying class members' identities, distributing payments to class members, and writing declarations. (Doc. No. 60-4 at 2.)

United States District Court
Central District of California

The Court finds the settlement administrator expenses reasonable and APPROVES the reimbursement.

### III.   CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Final Approval of Class Settlement.

The Court GRANTS IN PART and DENIES IN PART the Motion for Attorneys' Fees and Costs.  Class Counsel's request for attorneys' fees in the amount of $26,666.67 is DENIED.  Instead, the Court APPROVES attorneys' fees for Class Counsel of no more than $20,000.

All other cost reimbursements are APPROVED as set forth above.

**IT IS SO ORDERED.**

Dated:___12/20/17___                    _____
                                                              Virginia A. Phillips
                                            Chief United States District Judge